# 24-621-cv(L),
## 24-623(CON), 24-636(CON), 24-640(CON)

# United States Court of Appeals
### *for the*
# Second Circuit

557 ENTERTAINMENT INC., DCD EXCLUSIVE VIDEO INC., VIDEO LOVERS INC., JAYSARA VIDEO, INC., VISHARA VIDEO, INC., RAINBOW STATION 7 INC., CLUB AT 60TH STREET, INC., a Delaware corporation, JACARANDA CLUB, LLC, a New York limited liability company, DBA Sapphire, 59 MURRAY ENTERPRISES, INC., AKA 59 Murray Corp., DBA New York Dolls, AAM HOLDING CORP., DBA Private Eyes, JNS VENTURES LTD, DBA Vixen, TWENTY WEST PARTNERS, INC., d/b/a Wonderland, 689 EATERY, CORP., DBA Satin Dolls, 725 EATERY, CORP., substituting for MLB Enterprises, Corp., DBA Platinum Dolls,

*Plaintiff-Appellants,*

*(For Continuation of Caption See Inside Cover)*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## SUPPLEMENTAL BRIEF FOR APPELLANTS

ERICA T. DUBNO, ESQ.
FAHRINGER & DUBNO
*Attorney for Appellants*
   *557 Entertainment Inc., et al.*
43 West 43rd Street, Suite 261
New York, New York 10036
(212) 319-5351

CP COUNSEL PRESS    (800) 4-APPEAL • (329282)

336 LLC, DBA The Erotica, CHELSEA 7 CORP., 725 VIDEO OUTLET INC., GOTHAM VIDEO SALES & DISTRIBUTION INC., VISHANS VIDEO, INC., EXPLORE DVD LLC,

*Plaintiffs,*

– v. –

CITY OF NEW YORK, HON. BILL DE BLASIO, as Mayor of the City of New York, MELANIE E. LA ROCCA, as Commissioner of Buildings, Department of Buildings of the City of New York, RICK D. CHANDLER, as Commissioner of Buildings, Department of Buildings of the City of New York,

*Defendants-Appellees.*

## RULE 26.1 DISCLOSURE STATEMENT

Plaintiffs-Appellants 557 Entertainment Inc.; DCD Exclusive Video Inc.; Video Lovers Inc.; Jaysara Video, Inc.; Vishara Video, Inc.; and Rainbow Station 7 Inc., have no parent corporations. No publicly held corporation owns 10 percent or more of any Appellant's stock.

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................ iv

STATEMENT OF SUBJECT MATTER AND APPELLATE JURISDICTION ...................................................... 1

STATEMENT OF THE ISSUES PRESENTED .......................................... 2

STATEMENT OF THE CASE ................................................... 3

    The 1995 Amendments Used Objective Factors to Define what Constitutes an Adult Bookstore ................................................................ 5

    Bookstores Limited their Adult Floorspace and Stock to Less than 40 Percent and Complied with the 1995 Amendments ................................. 7

    The 2001 Amendments Modified the Definition of Adult Bookstore to Include Subjective Factors and Considerations Unrelated to Zoning ................................................ 9

    The 2001 Amendments were Stayed and Never Enforced .................................................... 13

    New York's Chief Judge Found that 60/40 Businesses "Produced Substantial Evidence" that they are "Functionally Different from the Pre-1995 Businesses and that the 60/40 Businesses Do Not Produce Negative Secondary Effects" ............................................ 14

    Judge Pauley Granted a Preliminary Injunction and Found that "Plaintiffs are More Likely than Not to Succeed on the Merits of their First Amendment Free Speech Claims" .................................................. 18

i

SUMMARY OF ARGUMENT ..................................................... 21

ARGUMENT ............................................................................ 24

    Standard of Review ......................................................... 24

    Introduction ....................................................................... 25

POINT I

THE 2001 AMENDMENTS DEPRIVE BOOKSTORES OF THEIR FOURTEENTH AMENDMENT RIGHT TO DUE PROCESS, AND THE FIRST AMENDMENT, BECAUSE, INTER ALIA, THEY DO NOT BEAR A SUBSTANTIAL OR REASONABLE RELATIONSHIP TO THE PUBLIC HEALTH, SAFETY, MORALS, OR GENERAL WELFARE ..................................... 27

    The 2001 Amendments are Not a Legitimate Exercise of the City's Zoning Powers ............................................... 27

    The 1995 Amendments Achieved their Objective and There has Been a Marked Decline in the Number of Adult Bookstores ...................................... 33

    Enforcement of the Stale 2001 Amendments Deprives Bookstores of Due Process .................................. 35

    Bookstore Plaintiffs Have Property Rights Entitled to Protection .......................................................... 37

POINT II

THE 2001 AMENDMENTS DEPRIVE
BOOKSTORES OF THEIR FIRST
AMENDMENT RIGHTS BECAUSE THEY DO
NOT ALLOW REASONABLE ALTERNATIVE
AVENUES OF COMMUNITY, AND DO NOT
LEAVE THE QUANTITY OF SPEECH
SUBSTANTIALLY INTACT, ESPECIALLY IN
LIGHT OF UNIQUE ZONING RESTRICTIONS
AND ISSUES RELATED TO SMALL
BOOKSTORES ............................................................... 43

CONCLUSION ................................................................ 48

CERTIFICATE OF COMPLIANCE .......................................... 50

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*City of Los Angeles v. Alameda Books, Inc.*,
   535 U.S. 425 (2002).................................................................. 26

*414 Theatre Corp. v. Murphy*,
   499 F.2d 1155 (2d Cir. 1974) ................................................... 25

*689 Eatery Corp. v. City of New York*,
   No. 02-cv-4431 (LJL), 2024 WL 519967 (Feb. 9, 2024)..................... 3, 4

*725 Eatery Corp. v. City of New York*,
   408 F.Supp.3d 424 (S.D.N.Y. 2019) ........................................ 19

*754 Orange Ave., Inc. v. City of West Haven, Conn.*,
   761 F.2d 105 (2d Cir. 1985) ............................................. 32, 47

*Abie State Bank v. Weaver*,
   282 U.S. 765 (1931)................................................................. 35

*Bose Corp. v. Consumers Union of United States, Inc.*,
   466 U.S. 485 (1984)................................................................. 24

*City of New York v. Les Hommes*,
   94 N.Y.2d 267 (1999)......................................................... 8, 30

*City of New York v. S & H Book Shop, Inc.*,
   41 A.D.2d 637 (1st Dept. 1973) ............................................. 25

*City of Renton v. Playtime Theatres, Inc.*,
   475 U.S. 41 (1986).................................................................. 26

*Columbus Ale House, Inc. v. Cuomo*,
   495 F.Supp.3d 88 (E.D.N.Y. 2020) ........................................ 41

*Defiance Milk Products Co. v. DuMond*,
   309 N.Y. 537 (1956)............................................................... 35

iv

*DeSena v. Gulde*,
    24 A.D.2d 165 (2d Dept. 1965) ................................................................ 32

*DLC Management Corp. v. Town of Hyde Park*,
    163 F.3d 124 (2d Cir. 1998) ...................................................... 28, 37, 39

*Ellington Const. Corp. v. Zoning Bd. of Appeals of
    Inc. Village of New Hempstead*,
    77 N.Y.2d 114 (1990) ............................................................................ 39

*For the People Theatres of N.Y., Inc. v. City of New York*,
    1 Misc. 3d 394 (Sup. Ct. N.Y. Co. 2003) ................................ 3, 13, 39, 40

*For the People Theatres of N.Y., Inc. v. City of New York*,
    131 A.D.3d 279 (1st Dept. 2015) .......................................................... 16

*For the People Theatres of N.Y., Inc. v. City of New York*,
    20 A.D.3d 1 (1st Dept. 2005) ................................................................ 14

*For the People Theatres of N.Y., Inc. v. City of New York*,
    27 Misc. 3d 1079 (Sup. Ct. N.Y. 2010) ................................................. 15

*For the People Theatres of N.Y., Inc. v. City of New York*,
    29 N.Y.3d 340 (2017) ............................................................................ 16

*For the People Theatres of N.Y., Inc. v. City of New York*,
    38 Misc. 3d 663 (Sup. Ct. N.Y. Co. 2012) ............................................ 16

*For the People Theatres of N.Y., Inc. v. City of New York*,
    6 N.Y.3d 63 (2005) .......................................................................... 14, 15

*For the People Theatres of N.Y., Inc. v. City of New York*,
    84 A.D.3d 48 (1st Dept. 2011) .............................................................. 15

*Fred F. French Investing Co., Inc. v. City of New York*,
    39 N.Y.2d 587 (1976) ............................................................................ 29

*Jones v. County of Suffolk*,
    936 F.3d 108 (2d Cir. 2019) .................................................................. 24

*Nectow v. City of Cambridge*,
    277 U.S. 183 (1928) .............................................................................. 28

*RRI Realty Corp. v. Incorporated Village of Southhampton*,
870 F.2d 911 (2d Cir. 1989) ...................................................... 37

*St. Onge v. Donovan*,
71 N.Y.2d 507 (1988) ................................................................ 32

*Stringfellow's of New York, Ltd. v. City of New York*,
91 N.Y.2d 382 (1998) .................................................................7

*Ten's Cabaret, Inc. v. City of New York*,
1 Misc. 3d 399 (Sup. Ct. N.Y. Co. 2003) ................................ 13

*TJS of New York, Inc. v. Town of Smithtown*,
598 F.3d 17 (2d Cir. 2010) ................................................. 26, 46

*Town of Huntington v. Sudano*,
42 A.D.2d 791 (2d Dept. 1973),
*aff'd*, 35 N.Y.2d 796 (1974) .................................................. 32

*Trustees of Union College v. Schenectady City Council*,
91 N.Y.2d 161 (1997)............................................................... 29

*Udell v. Haas*,
21 N.Y.2d 463 (1968) ............................................................... 33

*United States v. Playboy Entertainment Group, Inc.*,
529 U.S. 803 (2000)................................................................... 32

*Vernon Park Realty Inc. v. City of Mount Vernon*,
307 N.Y. 493 (1954)........................................................... 31, 35

**Statutes**

U.S. Const. amend. I ....................................................... passim

U.S. Const. amend. XIV ........................................ 2, 27, 28, 42

28 U.S.C. § 1291.........................................................................1

28 U.S.C. § 1331.........................................................................1

28 U.S.C. § 1343.........................................................................1

42 U.S.C. § 1983 ............................................................................ 3, 48

42 U.S.C. § 1988 ............................................................................. 48

Fed. R. App. P. 28 ............................................................................ 5

Fed. R. App. P. 32 ........................................................................... 50

N.Y. Penal Law § 55.10 ................................................................. 17

## Other Authorities

Dareh Gregorian,
   *N.Y. City is Porn Again*, N.Y. Post, Sept. 11, 2003 ................................ 39

Geoff Boucher,
   *VHS Era is Winding Down*, L.A. Times, Dec. 22, 2008, ........................ 36

https://www.npr.org/2013/02/01/170692025/grand-central-a-
   cathedral-for-commuters-celebrates-100 ................................................. 45

Susan Saulny,
   *Judge Rules Against Giuliani Plan on Sex Shops*,
   N.Y. Times, Sept. 11, 2003 ..................................................................... 39

## STATEMENT OF SUBJECT MATTER
## AND APPELLATE JURISDICTION

The District Court had original jurisdiction pursuant to 28 U.S.C. § 1331 and § 1343. The opinion and order issued on February 9, 2024 (ECF No. 211), and final judgment entered on February 23, 2024 (ECF No. 216), dispose of all parties' claims. A timely Notice of Appeal was filed on March 1, 2024. ECF No. 217. This brief is timely filed by April 30, 2024. The Court of Appeals has jurisdiction pursuant to 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUES PRESENTED

1. Whether the District Court erred in finding that the 2001 Amendments do not violate the Bookstore Plaintiffs' Fourteenth Amendment right to due process.

2. Whether the District Court erred in finding that the 2001 Amendments do not violate the Bookstore Plaintiffs' First Amendment right to free expression.

## STATEMENT OF THE CASE

This action was brought, pursuant to 42 U.S.C. § 1983, by small book and video stores in Manhattan, Queens, and Brooklyn, which provide constitutionally protected adult-oriented and non-adult information to the public ("Bookstores"). The Bookstore Plaintiffs are challenging Text Amendment N 010508 ZRY to the Zoning Resolution of the City of New York relating to adult establishments (the "2001 Amendments").

The 2001 Amendments deprive the Bookstore Plaintiffs of their federal constitutional and civil rights, in violation of the First and Fourteenth Amendments to the United States Constitution. The Bookstores' action was consolidated for decision with three related actions brought on behalf of eating and drinking establishments ("Clubs").[1]

This appeal seeks review of a consolidated opinion and order ("Decision") of Judge Lewis J. Liman, dated February 9, 2024 (ECF No. 211), and the final judgment dismissing as all of the related actions, entered February 23, 2024 (ECF No. 216), in the United States District Court for the Southern District of New York. The consolidated decision is available at *689*

---

[1] *689 Eatery Corp. v. City of New York*, Docket No. 1:02-cv-4431-LJL; *59 Murray Enterprises, Inc. v. City of New York*, Docket No. 1:02-cv-4432-LJL; and Club at 60th Street v. City of New York, Docket No. 1:02-cv-8333-LJL.

3

*Eatery Corp. v. City of New York*, No. 02-cv-4431 (LJL), 2024 WL 519967 (Feb. 9, 2024).

On April 9, 2024, this Court consolidated this appeal by the Bookstore Plaintiffs (Case No. 24-621) with the related appeals by the Clubs. Case Nos. 24-623, 24-636, and 24-640. The Court granted all Appellants leave to file a single, consolidated opening brief ("Consolidated Brief"), supplemented by this brief addressing issues unique to the Bookstore Appellants ("Supplemental Brief").

The Court also granted the parties permission to rely on the original record by hyperlinking to the documents electronically filed in the District Court. Hyperlinks here are to records filed in the Bookstores' case: *336 LLC v. City of New York*, Docket No. 1:18-cv-3732 (LJL). Given the related nature of the four cases, filings on common issues were made in joint documents on behalf of all parties on the same side of the case. ECF No. 107. A Consolidated Statement of Stipulated Facts ("CSF") was filed on May 19, 2023. ECF No. 168-1.[2]

---

[2] Plaintiffs filed a 17-volume Joint Appendix ("PJA") on November 21, 2018. ECF Nos. 29-45. A Statement of Stipulated Facts was filed on January 27, 2021. ECF No. 99-1. A Joint Request and Stipulations Regarding the Taking of Judicial Notice ("JNR") was filed on May 9, 2022. ECF No. 121. A Joint Statement of Facts was filed on May 23, 2022. ECF No. 122-1. A

The Bookstore Appellants join the arguments made in the Consolidated Brief, with the exception of Point IX, which only relates to Clubs. Fed. R. App. P. 28(i). Nothing here is intended to dispute or undermine any of the Club Appellants' claims.

### The 1995 Amendments Used Objective Factors to Define what Constitutes an Adult Bookstore

In 1995, the City enacted zoning restrictions specifically for "adult establishments." CSF ¶ 1; ECF No. 168-1 at 3. The amendments were intended to provide "permanent regulations governing the siting of adult establishments in a manner which works to protect against the adverse secondary effects of adult establishments while allowing sufficient opportunity for and access to adult materials." 1995 CPC Report at 1; ECF No. 121-5 at 9. The restrictions on businesses offering constitutionally protected adult expression were only enacted after extensive studies and investigation of whether the adult businesses that existed at the time were negatively affecting their surrounding communities. 1995 CPC Report at 2-5; ECF No. 121-5 at 10-13.

---

Supplemental Joint Statement of Facts was filed on September 8, 2022. ECF No. 127-1.

After careful consideration, the 1995 Amendments defined an "adult bookstore" as

> a bookstore which has as a "substantial portion" of its stock-in-trade any one or more of the following:
>
> (1) books, magazines, periodicals or other printed matter which are characterized by an emphasis upon the depiction or description of "specified sexual activities" or "specified anatomical areas"; or,
>
> (2) photographs, films, motion pictures, video cassettes, slides or other visual representations which are characterized by an emphasis upon the depiction or description of "specified sexual activities" or "specified anatomical areas." CSF ¶ 6; ECF No. 168-1 at 4.

The City Planning Commission Report, which sets forth the legislative history for the 1995 Amendments, provides that relative floor space and stock "are the factors an enforcement agency should look to in determining whether or not an establishment has a substantial portion of adult uses or materials." 1995 CPC Report at 51; ECF No. 121-5 at 59. "Other factors, such as a nature or prominence of display of adult materials, would reinsert a level of discretion into an enforcement effort which the Commission believes is unnecessary and should be avoided." *Id.*

6

Three years of litigation involving more than 100 plaintiffs in multiple cases was conducted in the state and federal courts regarding the constitutionality of the 1995 Amendments. CSF ¶ 8; ECF No. 168-1 at 5. By 1998, the courts had rejected those challenges. *Id.* In upholding the zoning restriction, the New York Court of Appeals noted that "[b]efore enacting the Resolution, the City Council assembled an extensive legislative record connecting adult establishments and negative secondary effects." *Stringfellow's of New York, Ltd. v. City of New York*, 91 N.Y.2d 382, 398 (1998). The Court also found that the 1995 Amendments were "no broader than necessary." 91 N.Y.2d at 400.

### Bookstores Limited their Adult Floorspace and Stock to Less than 40 Percent and Complied with the 1995 Amendments

In 1998, in response to a vagueness challenge brought in federal court, the City issued an Operations Policy and Procedure Notice ("OPPN") which defined the term "substantial portion" used in the definition of what constitutes an adult establishment. The City explained that a bookstore would be deemed an adult establishment if "at least 40 percent" of the bookstore's stock, or floorspace accessible to customers, has adult material. CSF ¶ 10; ECF No. 168-1 at 5. This became known as the "60/40 Rule." *Id.*

7

The courts ultimately vacated the injunctions and stays, and allowed the 1995 Amendments to become enforceable in 1998. Several of the regulated businesses permanently closed. CSF ¶ 14; ECF No. 168-1 at 6. Others complied with the 1995 Amendments and 60/40 Rule by reducing their floor space and stock devoted to the sale or presentation of adult materials or entertainment. CSF ¶ 15; ECF No. 168-1 at 7. They also toned down the exterior signage of their businesses. *Id.*

The City claimed that some businesses which modified their floor space and stock to comply with the 60/40 Rule had engaged in "sham" compliance. CSF ¶ 17; ECF No. 168-1 at 7. However, the New York Court of Appeals held that the 1995 Amendments should be strictly construed such that bookstores with less than 40 percent adult stock or floor space were not subject to the zoning restrictions on the location of adult businesses. *City of New York v. Les Hommes*, 94 N.Y.2d 267 (1999). CSF ¶ 18; ECF No. 168-1 at 7. And, thus, businesses that comply with the 60/40 Rule are not required to close, further modify their expression, or endeavor to relocate.

**The 2001 Amendments Modified the Definition of Adult Bookstore to Include Subjective Factors and Considerations Unrelated to Zoning**

On October 31, 2001—just weeks after the 9/11 attack on New York—the City amended the adult Zoning Resolution and significantly modified the definition of adult businesses. CSF ¶¶ 19, 22; ECF No. 168-1 at 7-8. Unlike the 1995 Amendments, which were only enacted after a study of existing businesses and adverse secondary effects, this time the City concededly made no investigation into whether the new type of businesses existing in 2001 caused any harm. CSF ¶ 34; ECF No. 168-1 at 12 ("the City did not undertake any new study of purported negative secondary effects allegedly to be attributable to establishments operating as 60/40 Businesses").

The 2001 Amendments completely eliminated the 60/40 Rule for Clubs. The amendments nominally kept the 60/40 requirements (less than 40 percent adult floorspace and stock) for Bookstores. CSF ¶ 27; ECF No. 168-1 at 9-11. However, the City amended the definition of an "adult bookstore" to provide that non-adult material—regardless of the percentage—would not be considered "stock-in-trade" (and thus excluded from a 60/40 analysis as a "sham") if the "store has one or more of the following features";

9

(aa) an interior configuration and layout which requires customers to pass through an area with adult material in order to access an area with non-adult material;

(bb) one or more individual enclosures where adult movies or live performances are available for viewing by customers;

(cc) a method of operation which requires customer transactions with respect to non-adult material to be made in an area of the store which includes adult material;

(dd) a method of operation under which non-adult material is offered for sale only and adult material is offered for sale or rental;

(ee) a greater number of different titles of adult material than the number of different titles of non-adult material;

(ff) a method of operation which excludes or restricts minors from the store as a whole or from any section of the store with non-adult material;

(gg) a sign that advertises the availability of adult material which is disproportionate in size relative to a sign that advertises the availability of non-adult material;

(hh) a window display in which the number of products or area of display of adult material is disproportionate in size relative to the number of products or area of display of non-adult material; and

(ii) other features relating to configuration and layout or method of operation, as set forth in rules adopted by the Commissioner of Buildings, which the Commissioner has determined render the sale or rental of adult material a substantial purpose of the business conducted in such store. CSF ¶ 27; ECF No. 168-1 at 10.

Under the 2001 Amendments, a bookstore that devotes less than 40 percent of its stock and floor space to adult material but has any one of those "sham" features is still an adult bookstore. CSF ¶ 28; ECF No. 168-1 at 11.

The CPC concluded that these additional features relate to ways in which a "bookstore which has achieved only a facial or superficial compliance with the 'substantial portion' test would be considered an 'adult bookstore.'" 2001 CPC Report at 34; ECF No. 121-6 at 113. The CPC believed these "physical and operational criteria are adequate to effectively describe the distinction between an adult book/video store and a neighborhood book/video store." 2001 CPC Report at 46; ECF No. 121-6 at 125.

The new definition of an adult bookstore was not the result of any investigation into whether the presence of any specific "sham" features causes harm to the community. Instead, the factors added onto the definition of an adult bookstore were largely in response to cases the City lost during enforcement proceedings under the 1995 Amendments.

As noted in the 2001 City Planning Commission Report, which forms the legislative history for the 2001 Amendments,

> [e]nforcement efforts since 1998 have pointed to a need to adjust the regulations to address attempts by adult establishments to remain in operation through superficial measures which do not alter the character of the establishment as enterprises with a "predominant, on-going focus on sexually explicit materials or activities."
>
> In addition, several court rulings have narrowed the scope and application of the 1995 Adult Use Regulations in a manner which the Department of City Planning believes is contrary to the original intent, thus requiring further amendments. 2001 CPC Report at 3; ECF No. 121-6 at 82.

During the City Planning Commission hearings a speaker representing the New York Civil Liberties Union stated that these "sham" features "fail constitutional scrutiny because 'they direct the building inspectors to draw an irrebuttable presumption that a commercial establishment is an "adult" commercial establishment' merely because they contain the proposed features." 2001 CPC Report at 26-27; ECF No. 121-6 at 105.

12

A City Planning Commissioner, William Grinker, urged "there is no justification for the extensive modifications to the zoning requirements that are being proposed, and it could be argued that this is little more than an effort at ongoing harassment which has no place in our constitutional interpretation of free speech." 2001 CPC Hearing Tr. at 10-11; ECF No. 121-6 at 216-17.

### The 2001 Amendments were Stayed and Never Enforced

The first lawsuits challenging the 2001 Amendments were commenced in 2002, before the amendments were to go into effect against existing businesses. CSF ¶ 20; ECF No. 168-1 at 8. Since then, there has been at least one such lawsuit pending in either state court, federal court, or both. *Id.* On September 26, 2002, a bookstore in Manhattan, and a theater in Queens, sought injunctive relief in the Supreme Court, New York County.

Justice Louis B. York granted summary judgment to the plaintiffs. *For the People Theatres of N.Y., Inc. v. City of New York*, 1 Misc. 3d 394 (Sup. Ct. N.Y. Co. 2003), *Ten's Cabaret, Inc. v. City of New York*, 1 Misc. 3d 399 (Sup. Ct. N.Y. Co. 2003) (related action brought by Clubs challenging the same law). He found that the 2001 Amendments "broadened" the definition of "adult bookstore" more than "needed to achieve the City's purpose of ameliorating negative secondary effects." 1 Misc. 3d at 395. The Appellate

13

Division reversed. *For the People Theatres of N.Y., Inc. v. City of New York*, *20 A.D.3d 1 (1st Dept. 2005)*.

> **New York's Chief Judge Found that 60/40 Businesses "Produced Substantial Evidence" that they are "Functionally Different from the Pre-1995 Businesses and that the 60/40 Businesses Do Not Produce Negative Secondary Effects"**

The New York Court of Appeals found that a question of fact existed as to whether 60/40 businesses were so transformed in character that they no longer resemble the kinds of adult uses found back in 1994 to create negative secondary effects. Questions of fact also existed concerning whether these businesses' "technical compliance with the 60/40 formula is merely a sham." The court remanded the matter back to Justice York for a trial. *For the People Theatres of N.Y., Inc. v. City of New York*, 6 N.Y.3d 63 (2005).

Chief Judge Judith Kaye, joined by Judges George Bundy Smith and Carmen Beauchamp Ciparick, dissented and would have struck down the 2001 Amendments. They noted that those plaintiffs "produced substantial evidence that the 60/40 businesses are functionally different from the pre-1995 businesses and that the 60/40 businesses do not produce negative secondary effects. ... [and] many of the community representatives in areas with a heavy presence of 60/40 businesses who had supported the 1995

14

resolution now opposed the 2001 amendment." 6 N.Y.3d at 87 (Kaye, C.J., dissenting). They urged "[i]t may well be that the City's earlier efforts to regulate adult businesses have proved ineffective, though the only evidence in the record is to the contrary" but "[w]hat is unacceptable is accomplishing that reform under the banner of the 1995 legislation, whose explicit purpose was quite a different one." *Id.*

On March 29, 2010, on remand, Justice York found the City failed to meet its burden of proof to establish that movie theaters, which reduce their adult component to less than 40 percent, have a predominant, ongoing focus on adult materials. The City did not appeal the judgment relating to theaters. Relating to bookstores, including those with private viewing booths, Justice York found the City met, what he labeled, its "light" burden. *For the People Theatres of N.Y., Inc. v. City of New York*, 27 Misc. 3d 1079 (Sup. Ct. N.Y. 2010).

On April 7, 2011, a unanimous panel of the Appellate Division vacated the findings. The Appellate Division remanded the case back to Justice York with instructions concerning how to determine whether 60/40 businesses have a predominant focus on sexually explicit materials. *For the People Theatres of N.Y., Inc. v. City of New York*, 84 A.D.3d 48 (1st Dept. 2011).

15

On August 30, 2012, after re-considering the trial evidence and following the directions from the Appellate Division, Justice York declared the 2001 Amendments to be unconstitutional as to 60/40 Bookstores and Clubs. *For the People Theatres of N.Y., Inc. v. City of New York*, 38 Misc. 3d 663, 675 (Sup. Ct. N.Y. Co. 2012). On July 21, 2015, the Appellate Division affirmed Justice York's judgment. *For the People Theatres of N.Y., Inc. v. City of New York*, 131 A.D.3d 279 (1st Dept. 2015). On June 6, 2017, the New York Court of Appeals, with only five Judges sitting, reversed the Appellate Division and trial judge, and upheld the constitutionality of the 2001 Amendments. *For the People Theatres of N.Y., Inc. v. City of New York*, 29 N.Y.3d 340 (2017).

Twelve bookstores who were not part of the state litigation commenced this federal action in 2018.[3] The Bookstores regularly present adult materials in less than 40 percent of their relevant floorspace, and less than 40 percent of their stock consists of adult materials. CSF ¶ 30; ECF No. 168-1 at 11. They comply with the 1995 Amendments. However, they would not be able to continue operating in their current format—and could be subject to criminal

---

[3] Six of those original Plaintiffs are the Bookstore Appellants in this appeal.

16

charges,[4] closure, and other penalties—if the 2001 Amendments were enforceable. CSF ¶ 29; ECF No. 168-1 at 11 (all of the Bookstore Plaintiffs "presently operate businesses defined by the 2001 Amendments as 'adult' but which would not be deemed adult establishments but for the enactment of the 2001 Amendments").

This is because despite complying with the 60/40 Rule, and only having a limited percentage of adult material, they have at least one of the "sham" features. This includes having any private viewing booths. Booths allow adults to view a wide range of sexually explicit material—including non-obscene movies that some might believe are deviant, aberrant, queer, or unorthodox—within the privacy of a safe space and judgment free zone. No one knows what selection a person is viewing. Zazzali Decl. ¶ 11; ECF No. 132-1 at 4. In most 60/40 bookstores the "booths only occupy approximately

---

[4] Section 11-61 of the City's Zoning Resolution provides, in pertinent part, that the owner or operator of any place in violation of a provision of the Zoning Resolution "shall be guilty of a misdemeanor." Section 55.10(2)(b) of New York's Penal Law states that any offense defined outside this chapter which is declared by law to be a misdemeanor "shall be deemed a class A misdemeanor." P.L. § 70.15(1) then authorizes a sentence of imprisonment of up to 364 days for a class A misdemeanor. Therefore, criminal charges—punishable by nearly a year in jail—may be filed against bookstore owners perceived to be in violation of the 2001 Amendments.

10 to 20 percent of the total floor space accessible to customers." Zazzali Decl. ¶ 27; ECF No. 132-1 at 9.

Bookstores without booths may remain at locations where adult establishments are prohibited "subject to the eight additional factors included in the 60/40 requirements for bookstores." CSF ¶ 172; ECF No. 168-1 at 60. All 60/40 bookstores would have to close, endeavor to relocate, or conform to the factors included in the City's requirements for bookstores. CSF ¶ 174; ECF No. 168-1 at 60.

Enforcement of the 2001 Amendments remained stayed and they have never been enforced against any of the Bookstore Appellants. CSF ¶ 21; ECF No. 168-1 at 8.

> ### Judge Pauley Granted a Preliminary Injunction and Found that "Plaintiffs are More Likely than Not to Succeed on the Merits of their First Amendment Free Speech Claims"

On September 30, 2019, in a decision consolidated with the Club Plaintiffs' actions, Judge William H. Pauley granted the Plaintiffs' motions for a preliminary injunction against enforcement of the 2001 Amendments. 725 Eatery Corp. v. City of New York, 408 F.Supp.3d 424 (S.D.N.Y. 2019). ECF No. 70. Judge Pauley found that "Plaintiffs are more likely than not to

18

succeed on the merits of their First Amendment free speech claims." 408
F.Supp.3d at 459. Judge Pauley also noted:

> The adult-use regulations that are the subject of
> these now-revived constitutional challenges are a
> throwback to a bygone era. The City's landscape
> has transformed dramatically since Defendants last
> studied the secondary effects of adult
> establishments twenty-five years ago.
>
> As Proust might say, the "reality that [the City] had
> known no longer existed," and "houses, roads, [and]
> avenues are as fugitive, alas, as the years." Marcel
> Proust, Swann's Way, in Remembrance of Things
> Past (C.K. Scott Moncrieff trans., 1922) (1913). 408
> F.Supp.3d at 470.

Judge Pauley passed away and on July 28, 2021, the case was
reassigned to Judge Liman.

On September 16, 2022, all Plaintiffs moved for partial summary
judgment (ECF No. 128), and the City moved for summary judgment. ECF
No. 134. On May 2, 2023, to accommodate procedural issues, the court denied
those motions without prejudice and directed the parties to file renewed
motions. ECF No. 157. The summary judgment motions were refiled on May
26, 2023. ECF Nos. 171, 173. The court set the matter for a bench trial and
agreed to accept declarations as direct witness testimony, as well as the
parties' Consolidated Statement of Stipulated Facts. ECF No. 168-1. The
parties submitted a listing of all declarations and affidavits to be considered

19

direct trial testimony. ECF No. 164. The parties agreed not to cross-examine any witness statements. The court heard closing arguments on November 28 and 29, 2023.

On February 9, 2024, the court held in favor of the City on all of the Plaintiffs' claims and directed judgment. Dec. at 167; ECF No. 211 at 167. It also denied as moot all pending motions for summary judgment. ECF No. 212.

On February 22, 2024, Judge Liman approved and so-ordered the parties' stipulation continuing the stay of enforcement of the 2001 Amendments which has been in effect since 2002 as to the appealing Plaintiffs pending a decision on this appeal. ECF No. 214.

## SUMMARY OF ARGUMENT

A municipality can impose zoning restrictions on property owners. However, restrictions must have a substantial relation to the public health, safety, morals, or general welfare. And where, as here, a municipality imposes zoning restrictions on bookstores that offer constitutionally protected expression to the public, the municipality must allow for reasonable alternative avenues of communication, and leave the quantity of speech substantially intact. The restrictions also must be narrowly tailored to serve a substantial government interest. A municipality which is restricting speech bears the burden of proving the constitutionality of its actions.

The 1995 Amendments were only enacted after studies, and were narrowly tailored to serve the governmental interest in eliminating adverse effects caused by the exclusively adult businesses that existed at the time. The 1995 Amendments, using objective factors, carefully defined what constitutes an adult establishment that would be subject to the zoning restrictions. This was important because a violation can result in criminal charges, as well as closure of the business and silencing all expression.

In stark contrast, rather than relating to any adverse secondary effects caused by 60/40 businesses, the 2001 Amendments were reactive solely and in response to the City's claim that certain businesses' compliance with the 1995 Amendments and 60/40 Rule was a "sham." The 2001 amended definition was not a legitimate exercise of the City's zoning powers and has no substantial relationship to the City's police powers. Zoning relates to the location of businesses, not their internal operation or the substantial purpose of a bookstore.

Enforcement of the 2001 Amendments will deny the Bookstores procedural and substantive due process, and violate their First Amendment rights. The Bookstores have a legitimate claim of entitlement to their property rights.

The 2001 Amendments severely restrict where and how businesses offering adult entertainment to consenting adults on private property can operate. Bookstores are not allowed to be located in certain manufacturing districts identified by the City as places permissible for adult businesses. And, most of the lots identified by the City are wholly unreasonable alternative avenues for these small bookstores. The quantity of speech at Bookstores and in booths will not be left substantially intact.

22

The facts and circumstances have changed so substantially in the last 23 years that application of this atrophied ordinance is clearly arbitrary, unreasonable, fundamentally unfair, and conscience shocking. It will effectively eliminate private viewing booths in the City and deprive the public of access to constitutionally protected expression.

The status quo should remain as it has for more than two decades. The Bookstores will still be governed by the 1995 Amendments, which were upheld as narrowly tailored and reasonable ways to eliminate any adverse secondary effects. These stale and unnecessary restrictions should not be used to deprive the Bookstores of due process and their property rights. They also should not be allowed to restrict their expression, and the public's right to access constitutionally protected information.

## ARGUMENT

### Standard of Review

This case involves First Amendment rights. As a consequence, this Court has an "obligation to 'make an independent examination of the whole record' in order to make sure that 'the judgment does not constitute a forbidden intrusion on the field of free expression.'" *Bose Corp. v. Consumers Union of United States, Inc.*, 466 U.S. 485, 499 (1984), quoting *New York Times Co. v. Sullivan*, 376 U.S. 254, 284-286 (1964).

This case also involves the deprivation of the Bookstore Appellants' property rights without due process of law under the Fourteenth Amendment. Whether undisputed facts rise to the level of a constitutional violation is a question of law this Court reviews *de novo. Jones v. County of Suffolk*, 936 F.3d 108, 114 (2d Cir. 2019).

## Introduction

One of the oldest, deepest and most conclusive attractions of a free society is the belief that throughout its system all forms of information, whatever its nature, will be accessible. The sale of non-obscene books and films has long been recognized as protected by the First Amendment. And, the exhibition of films in coin-operated private viewing booths is also protected. *See, e.g.*, *414 Theatre Corp. v. Murphy*, 499 F.2d 1155, 1159 (2d Cir. 1974); *City of New York v. S & H Book Shop, Inc.*, 41 A.D.2d 637, 637 (1st Dept. 1973).

In *414 Theatre Corp.*, this Court addressed the application of a city ordinance, which required licensing of places of amusement, to businesses with peep shows and booths. The Court was concerned that enforcement of the ordinance would require peepshow owners to choose between continuing to show films in booths "thereby subjecting itself and employees to the threat of criminal and civil prosecution, and removing the film machines from its premises permanently," which involves a deprivation of the business owner and "the public's first amendment rights to show and view films." 499 F.2d at 1160. Such a Hobson's Choice constituted irreparable injury warranting injunctive relief, because there is "no means to make up for the irretrievable loss of that which would have been expressed." *Id.*

25

The "First Amendment permits municipal governments to use zoning laws as a means of addressing the 'secondary effects' of adult establishments." *TJS of New York, Inc. v. Town of Smithtown*, 598 F.3d 17, 21 (2d Cir. 2010). However, the zoning ordinance must serve a substantial governmental interest. *Id.* It must be narrowly tailored to serve this interest. *City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 52 (1986). The ordinance also must allow for "reasonable alternative avenues of communication." 475 U.S. at 50. And, consideration must be given to "how speech will fare under the city's ordinance." *City of Los Angeles v. Alameda Books, Inc.*, 535 U.S. 425, 440 (2002) (Kennedy, J., concurring).

In *Village of Euclid, Ohio v. Ambler Realty Co.*, 272 U.S. 365 (1926), the Court held that a municipality could use its police power to create and implement a comprehensive plan for the use of land in the community. However, the Court did not totally extinguish the rights of individual property owners. Instead, it "expressly recognized that the broad zoning power must be exercised within constitutional limits." *Moore v. City of East Cleveland, Ohio*, 431 U.S. 494, 513-514 (1977) (Stevens, J., concurring).

## POINT I

**THE 2001 AMENDMENTS DEPRIVE BOOKSTORES OF THEIR FOURTEENTH AMENDMENT RIGHT TO DUE PROCESS, AND THE FIRST AMENDMENT, BECAUSE, INTER ALIA, THEY DO NOT BEAR A SUBSTANTIAL OR REASONABLE RELATIONSHIP TO THE PUBLIC HEALTH, SAFETY, MORALS, OR GENERAL WELFARE**

The Complaint alleges that the "Defendants, acting under color of law, deprive the Plaintiffs, and other bookstores in New York City that offer some adult oriented constitutionally protected information to the public, of their significant property rights without a sufficient legal or factual basis, and without due process, in violation of the First and Fourteenth Amendments to the United States Constitution." Second Amended Complaint at 63; ECF No. 78 at 63.

### The 2001 Amendments are Not a Legitimate Exercise of the City's Zoning Powers

The district court erred in denying the Bookstores' due process challenge to the 2001 Amendments. Dec. at 161; ECF No. 211 at 161. The court said the Bookstores' procedural due process claim fails because they "have not established that they have a protectable property right to purvey

27

sexually explicit materials in the places where they currently are located." Dec. at 162; ECF No. 211 at 162.

The lower court cited to *DLC Management Corp. v. Town of Hyde Park*, 163 F.3d 124, 130 (2d Cir. 1998), for the unremarkable proposition that "a property owner necessarily expects the uses of his property to be restricted, from time to time, by various measures newly enacted by the State in legitimate exercise of its police powers." It notes that "local governments have wide latitude to exercise their police power to enact zoning regulations." Dec. at 166; ECF No. 211 at 166, citing *Goldblatt v. Town of Hempstead*, 369 U.S. 590 (1962).

There is no dispute that municipalities have wide latitude when exercising their zoning authority. However, unconstitutional ordinances are not above reproach and can be challenged under the Fourteenth Amendment. The "governmental power to interfere by zoning regulations with the general rights of the land owner by restricting the character of his use, is not unlimited, and, other questions aside, such restriction cannot be imposed if it does not bear a substantial relation to the public health, safety, morals, or general welfare." *Nectow v. City of Cambridge*, 277 U.S. 183, 188 (1928) (since a "necessary basis" for the zoning regulation is "wanting, the action of the

zoning authorities comes within the ban of the Fourteenth Amendment and cannot be sustained"). 277 U.S. at 188-189.

Restrictions on the use of property must be enacted as part of a *legitimate exercise* of the municipality's police powers. *DLC Management,* 163 F.3d at 130. An "exercise of the police power to regulate private property by zoning which is unreasonable constitutes a deprivation of property without due process of law." *Fred F. French Investing Co., Inc. v. City of New York,* 39 N.Y.2d 587, 595 (1976). A "zoning ordinance will be struck down if it bears no substantial relation to the police power objective of promoting the public health, safety, morals or general welfare." *Trustees of Union College v. Schenectady City Council,* 91 N.Y.2d 161, 165 (1997).

The radically amended definition of what constitutes an adult bookstore was *not* the result of any study or finding that it bore any substantial or even reasonable relationship to the public health, safety, morals or general welfare. It was merely an *ad hoc* reaction to instances of what the City believed was "sham" compliance.

For example, the 2001 Amendments provide that even if a bookstore dedicates less than 40 percent of its floorspace and stock to adult material, it is an "adult bookstore" if it has a "method of operation" under which non-adult material is offered for sale only and adult material is offered for sale *or rental*. CSF ¶ 27; ECF No. 168-1 at 10. There has never been any finding that bookstores that rent and sell adult DVDs, but only sell non-adult DVDs, cause harm to the community.

Instead, this vestige comes from a case where decades ago a small gay bookstore on the Upper West Side of Manhattan was only offering non-adult videotapes for sale, but had a rental program for adult videotapes. *Les Hommes*, 94 N.Y.2d at 272 (it was "significant" to the lower court that "the nonadult videos were offered only for sale, not for rent").[5]

The lower court believes the Bookstores have not established a protectable property right because the Zoning Resolution "explicitly gives the [City Planning Commission] the authority to propose changes to zoning regulations 'upon its own initiative at any time.'" Dec. at 162; ECF No. 211 at 162, quoting N.Y. City Charter § 200.a.1. While land owners may be aware

---

[5] The City lost *Les Hommes* and the New York Court of Appeals rejected the notion that "sham" compliance was relevant under the 1995 Amendments. 94 N.Y.2d at 273.

that the CPC has the authority to propose zoning amendments, "[k]nowledge of the owner cannot validate an otherwise invalid ordinance." *Vernon Park Realty Inc. v. City of Mount Vernon*, 307 N.Y. 493, 500 (1954).

Rather than focusing on objective facts—floorspace and stock—the new definition of an adult bookstore included factors, "such as a nature or prominence of display of adult materials," that the 1995 Amendments expressly excluded because of concerns that subjective factors "would reinsert a level of discretion into an enforcement effort which the Commission believes is unnecessary and should be avoided." 1995 CPC Report at 51; ECF No. 121-5 at 59.

These changes are not the proper subject of regulation under the City's zoning authority. The "Long Title" of the Zoning Resolution provides that it is a

> Resolution regulating the height and bulk of buildings and other structures, regulating and determining the area of yards, courts and other open spaces, and the density of population, and regulating and restricting the location of trades and industries and the location of buildings designed for specific uses within the City of New York, and for such purposes dividing the City into districts. Z.R. § 11-01.

31

This legislative mandate makes clear that the Zoning Resolution was intended to regulate proper zoning considerations like the *height* of buildings and *location* of certain types of uses—rather than the *method of operation* of a bookstore. Zoning power must "operate in relation to the use of land and not for the accomplishment of purposes extraneous to that relation." *DeSena v. Gulde*, 24 A.D.2d 165, 171 (2d Dept. 1965). And, a municipality's exercise of its zoning power cannot "venture beyond the limits of its grant from the Legislature." 24 A.D.2d at 170.

Restrictions regarding *specific titles* of books, or whether certain types of VHS tapes are rented, have nothing to do with legitimate land use concerns. *See, e.g.*, *Town of Huntington v. Sudano*, 42 A.D.2d 791, 792 (2d Dept. 1973), *aff'd*, 35 N.Y.2d 796 (1974); *St. Onge v. Donovan*, 71 N.Y.2d 507, 516 (1988) (a "zoning board may not impose a condition that seeks to regulate the details of the operation of an enterprise, rather than the use of the land on which the enterprise is located").

The City's failure to connect the 2001 Amendments to any adverse secondary effects is also significant under the First Amendment. Where, as here, the government restricts speech, *it* "bears the burden of proving the constitutionality of its actions." *United States v. Playboy Entertainment Group, Inc.*, 529 U.S. 803, 816 (2000). In *754 Orange Ave., Inc. v. City of*

*West Haven, Conn.*, 761 F.2d 105, 111 (2d Cir. 1985), an adult establishment was entitled to injunctive relief against enforcement of an adult ordinance where, *inter alia*, the municipality failed to show a significant state interest, and there was no definition of "adult bookstore" that would "confine the application" of the ordinance as "explicitly defined."[6]

Back in 1995, the City may well have had a substantial and legitimate interest in combating alleged adverse secondary effects from adult establishments. However, the 2001 Amendments bear absolutely no relation to that interest.

### The 1995 Amendments Achieved their Objective and There has Been a Marked Decline in the Number of Adult Bookstores

These unprecedented amendments serve no substantial governmental interest because the 1995 Amendments already accomplished their objective. A primary concern underlying the original zoning ordinance was the sheer volume and proliferation of adult businesses. 1995 CPC Report at 1; ECF No. 121-5 at 2 (the Department of City Planning undertook its investigation of

---

[6] "Exercise of the legislative power to zone should be governed by rules and standards as clearly defined as possible, so that it cannot operate in an arbitrary and discriminatory fashion, and will actually be directed to the health, safety, welfare and morals of the community." *Udell v. Haas*, 21 N.Y.2d 463, 469 (1968).

existing adult businesses in 1994 "in response to growing concern that adult establishments were proliferating in New York City and concentrating in areas where such establishments had previously not been located and were negatively affecting their surrounding communities").

In considering the 2001 Amendments, City Planning Commissioner Grinker feared they were a "solution in search of a problem." Transcript of CPC Hearing, dated August 8, 2001 at 9; ECF No. 121-6 at 215. He noted the "number of adult use facilities has gone down substantially" which was the "original intent of the [1995] Zoning plan." CPC Hearing Tr. at 10; ECF No. 121-6 at 216.

Prior to the 1995 Amendments, the Department of City Planning identified 86 adult bookstores (including peep shows and video stores) citywide. CSF ¶ 177; ECF No. 168-1 at 61. Today, there are just 24 known 60/40 bookstores citywide: 14 in Manhattan, 2 in the Bronx, 5 in Brooklyn, and 3 in Queens. CSF ¶ 174; ECF No. 168-1 at 60.

There are only *two* 100 percent adult bookstores in the *entire City* that would be allowed to remain in place without modifying their business and eliminating any booths. The only exclusively adult bookstore in Manhattan is a small video store at 300 West 40th Street, tucked down the stairs to the subway. Zazzali Decl. ¶ 7; ECF No. 132 at 2-3. The entrance is on a landing

34

between two flights of stairs leading to the subway and is not wheelchair accessible.[7] Zazzali Decl. ¶ 9; ECF No. 132 at 3. The store does not have any booths. CSF ¶ 180; ECF No. 168-1 at 62. The only other adult bookstore has booths but is on Staten Island. *Id.* Thus, just one store with booths in the entire City would survive enforcement.

**Enforcement of the Stale 2001 Amendments Deprives Bookstores of Due Process**

This "throwback to a bygone era" (408 F.Supp.3d at 470) is wholly unnecessary today. Even if the 2001 Amendments were valid when they were enacted, which is disputed, they may still be "stricken down as invalid when, at a later time, its operation under changed conditions proves confiscatory." *Vernon Park Realty Inc. v. City of Mount Vernon*, 307 N.Y. 493, 499 (1954). Due process concerns arise where, as here, there are subsequent changes or events. *See Abie State Bank v. Weaver*, 282 U.S. 765, 772 (1931) (a "police regulation, although valid when made, may become, by reason of later events, arbitrary and confiscatory in operation"); *Defiance Milk Products Co. v. DuMond*, 309 N.Y. 537, 541 (1956) ("even though a police power enactment

---

[7] There are 60/40 bookstores in Manhattan with booths that are at street level and accessible to customers who use wheelchairs. Knecht Decl. ¶ 6; ECF No. 133 at 2.

may have been or may have seemed valid when made, later events or later-discovered facts may show it to be arbitrary and confiscatory").

In recent years, the Internet, including Netflix, Amazon, Pornhub, OnlyFans, and other factors have impacted the sales of DVDs and tapes from brick-and-mortar stores. The bookstore business is struggling. Zazzali Decl. ¶ 6; ECF No. 132 at 2. However, there is still demand for viewing erotic films in private viewing booths. *Id.* Unlike the Internet, which can be traced to a specific computer or phone, booths provide total anonymity. Zazzali Decl. at ¶ 12; ECF No. 132-1 at 4. No 60/40 bookstores could continue to exhibit adult videos in private booths at their current locations. CSF ¶ 184; ECF No. 168-1 at 62. This will "sound the death knell for virtually all booths in New York City." Knecht Decl. ¶ 26; ECF No. 133-1 at 11.

A thick layer of dust formed long ago on the unused text of the 2001 Amendments. When that dust is blown off and the words are revealed it is clear that even the definition of an "adult bookstore," belongs in the last millennium. It refers to "films, motion pictures, video cassettes, slides or other visual matter." CSF ¶ 6; ECF No. 168-1 at 4. However, slides, video cassettes, and VHS tapes are relics of the past. *See* Geoff Boucher, *VHS Era is Winding Down*, Los Angeles Times, Dec. 22, 2008, available at https://www.latimes.com/archives/la-xpm-2008-dec-22-et-vhs-tapes22-

36

story.html ("the once ubiquitous home video format" will "finish this month as a creaky ghost of Christmas past").

### Bookstore Plaintiffs Have Property Rights Entitled to Protection

Zoning regulations "will survive [a] substantive due process challenge unless they are 'clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals, or general welfare.'" *RRI Realty Corp. v. Incorporated Village of Southhampton*, 870 F.2d 911, 915 (2d Cir. 1989), quoting *Euclid*, 272 U.S. at 395.

New York uses an "entitlement test" when "determining whether an alleged property right is sufficient to support a substantive due process claim." *DLC Management*, 163 F.3d at 130. The "person claiming the right must have a 'legitimate claim of entitlement' to it." *Id.*, quoting *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972). Here, the Bookstores' property rights rise to the level of a legitimate claim of entitlement protected by the Due Process Clause.

The district court cited to *RRI Realty*, 870 F.2d at 915-16, for the proposition that "[w]hile there exists a property right in land ownership, there is no substantive due process right against enforcement of a zoning law." Dec. at 166; ECF No. 211 at 166. However, while land ownership alone is not

37

sufficient to establish a substantive due process right, an owner has a right to a particular zoning status where, as here, the zoning status vested. *DLC Management*, 163 F.3d at 130-31.

In order for a right to a particular zoning status to vest, a property owner must have made "substantial expenditures prior to the enactment of the more restrictive zoning ordinance." *Id*. The Bookstores have a legitimate claim of entitlement to their property rights to support their substantive due process claim. All of the Bookstore Plaintiffs were specifically configured to conform to the 60/40 Rule. CSF ¶¶ 59c, 60c, 61c, 62c, 63c, 64c, 65c, 66c, 67c, 68c, 69c. The Bookstores made substantial expenditures in their booths and other aspects of their business.[8] Each viewing booth costs approximately $10,000. CSF ¶ 185; ECF No. 168-1 at 62. Commercial locations may require electricians to rewire the premises to enable the installation of booths and such work may require permits from the Buildings Department. CSF ¶ 186; ECF No. 168-1 at 62.

Appellant 557 Entertainment Inc.'s right to its existing zoning status vested because its location (557 Eighth Avenue in Manhattan) was operated

---

[8] For example, it "cost more than $300,000" to design, build, and open one bookstore in compliance with the 60/40 Rule. Zazzali Decl. ¶ 36; ECF No. 132-1 at 12.

as a 60/40 business before the 2001 Amendments were adopted. CSF ¶ 38; ECF No. 168-1 at 14-15.

Other bookstores opened after the 2001 Amendments were enacted. However, their rights vested by equitable estoppel because they opened when the law had been declared unconstitutional or enforcement was stayed.[9] Most of the Bookstore Appellants opened at a time when a judicial determination had been made striking down the 2001 Amendments as unconstitutional.

For example, in 2003, Justice York found the 2001 Amendments "are facially unconstitutional and that they control the content of the establishments they seek to regulate." *For the People Theatres*, 1 Misc.3d at 396. Justice York's publicized ruling,[10] striking down the 2001 Amendments,

---

[9] In *Ellington Const. Corp. v. Zoning Bd. of Appeals of Inc. Village of New Hempstead*, 77 N.Y.2d 114, 122 (1990), the Court noted that the doctrine of vested rights is "said to have been grounded on principles of equitable estoppel." Zoning restrictions are "in derogation of the common law" and "must be strictly construed against the municipality" which seeks to enforce it. 77 N.Y.2d at 123. In *DLC Management*, 163 F.3d at 131, this Court recognized that an existing zoning status may vest by equitable estoppel where construction has been improperly delayed by town officials in an attempt to prevent vesting.

[10] *See, e.g.*, Susan Saulny, *Judge Rules Against Giuliani Plan on Sex Shops*, N.Y. Times, Sept. 11, 2003, at B2; Dareh Gregorian, *N.Y. City is Porn Again*, N.Y. Post, Sept. 11, 2003, at 21 ("a Manhattan judge has thrown out new city zoning regulations that would have shuttered almost all of the city's remaining strip clubs, peep shows and adult movie theaters, video and book stores").

was still on the books when Appellants DCD Exclusive Video Inc. and Vishara Video, Inc., began operating at their current locations in at least 2003-2005. CSF ¶¶ 64a, 68a; ECF No. 168-1 at 29, 34. On August 30, 2012, Justice York again held that, on their face, the 2001 Amendments are unconstitutional. *For the People Theatres*, 38 Misc.3d at 675. The Appellate Division agreed and affirmed the permanent injunction. For the People Theatres, 131 A.D.3d 294. That was the state of the law when Appellants Rainbow Station 7 Inc. and Video Lovers Inc. opened. CSF ¶¶ 62a, 63a; ECF 168-1 at 27, 28.

The Bookstores desire to own and manage a business which presents adult expression and material to the public through private video booths and other means. CSF ¶¶ 59e, 60e, 61e, 62e, 63e, 64e, 65e, 66f, 67e, 68e, 69f. If the 2001 Amendments are enforced, Bookstores would not be able to continue their present business at their current locations, and would be forced to seek other locations in order to offer adult expression to the public through private video booths. CSF ¶¶ 59f, 60f, 61f, 62f, 63f, 64f, 65f, 66g, 67f, 68f, 69g. The same is true if the Bookstores wish to have a greater assortment of adult titles, rent out certain types of DVDs, or not operate their business according to the features dictated in the "adult bookstore" definition.

The lower court cited a district court decision for the proposition that the "right to conduct a business or engage in a chosen profession does not entitle plaintiff to operate its business free from government regulation." Dec. at 164; ECF No. 211 at 164, citing *Columbus Ale House, Inc. v. Cuomo*, 495 F.Supp.3d 88, 94 (E.D.N.Y. 2020). Businesses offering some adult materials are already heavily regulated under the existing 1995 Amendments. The Appellants are not asking to be free from *reasonable* governmental regulations. But the 2001 regulations are not reasonable.

*Columbus Ale House* involved a challenge to the Governor's rule prohibiting food service after midnight during the COVID-19 pandemic. The court noted that "the state may curtail constitutional rights in response to a society-threatening epidemic so long as the measures have at least some 'real or substantial relation' to the public health crisis and are not 'beyond all question, a plain, palpable invasion of rights secured by the fundamental law.'" 495 F.Supp.3d at 92. The emergency order in that case—involving an active and highly fatal pandemic—is lightyears from the City's efforts to enforce rules enacted more than 20 years ago dictating how a bookstore may operate. The 2001 Amendments, which were based on a *1994* study, have nothing to do with a current society-threatening epidemic.

41

It is fundamentally unfair and conscience shocking to enforce such stale and subjective restrictions on constitutionally protected bookstores today without some consideration of whether they are needed.

For all these reasons, enforcement of the 2001 Amendments violates the Bookstore Plaintiffs' rights to due process, under the Fourteenth Amendment, as well as their right to free expression under the First Amendment.

## POINT II

**THE 2001 AMENDMENTS DEPRIVE BOOKSTORES OF THEIR FIRST AMENDMENT RIGHTS BECAUSE THEY DO NOT ALLOW REASONABLE ALTERNATIVE AVENUES OF COMMUNITY, AND DO NOT LEAVE THE QUANTITY OF SPEECH SUBSTANTIALLY INTACT, ESPECIALLY IN LIGHT OF UNIQUE ZONING RESTRICTIONS AND ISSUES RELATED TO SMALL BOOKSTORES**

Without viewing booths, and subject to the other unreasonable conditions in the 2001 Amendments, the Bookstores will be unable to operate their businesses in a way that leaves the quantity of speech substantially intact and enables the public to access free expression. There is considerable power in the concept that the societal interests are far greater where the public's constitutional right to read and see what it pleases is at stake.

In addition to the grounds set forth in the Appellants' Consolidated Brief regarding insufficient alternative avenues for expression, the Bookstore Plaintiffs face extra obstacles if forced to relocate.[11] All bookstores are

---

[11] The Clubs establish that their First Amendment rights would be violated, and their expression chilled, through enforcement of the 2001 Amendments. Nothing presented here regarding unique obstacles imposed on Bookstores is offered to call into question any of the Clubs' meritorious claims.

43

prohibited in medium (M2) and heavy (M3) manufacturing districts. CSF ¶¶ 122, 133; ECF Nos. 168-1 at 46, 168-1 at 49. As such, adult bookstores—which are bookstores—may not be permitted in industrial areas which form much of the permissible areas for adult establishments. Declaration of Dr. Elliott Sclar, Emeritus Professor of Urban Planning at Columbia University, ¶¶ 82-91; ECF No. 41 at 53.

The number of alternative avenues available to Bookstores is less than the totals generally calculated by the City. CSF ¶ 245; ECF No. 168-1 at 78 ("DCP contends that [given that each adult establishment also requires an additional 500-foot buffer] up to 204 of those 1,275 lots could be simultaneously occupied by adult establishments [including 110 lots that could be occupied by adult bookstores if, assuming arguendo, they were not permitted in M2 or M3 districts, as the bookstore plaintiffs assert]").

In determining the number of locations where adult establishments technically can be located, the City did not impose any upper limit on the size of lots considered. CSF ¶ 145(i); ECF No. 168-1 at 54. Most of the lots included on the City's list are massive tracts and wholly unsuitable for relocation of small bookstores. For example, the lot at 4101 Arthur Kill Road on Staten Island is 7,346,540 square feet. *See* City's Chart of Unencumbered Lots, at p. 2; ECF No. 121-10 at 49; CSF ¶ 145(i); ECF No. 168-1 at 54. That

44

is more than *168 acres*. To put this into context, the Court can take judicial notice that Grand Central Terminal is only 49 acres.[12] More than 140 lots on the list are greater than 100,000 square feet. ECF No. 121-10 at 49.

Most of the bookstores are a fraction of that size. City's Chart of Adult Use Establishments that Have to Relocate, at p. 1-2; ECF No. 51-1 at 1-2. For example, Appellant 557 Entertainment Inc. is on a lot in the Special Garment Center District, that is 2,856 square feet. ECF No. 51-1 at 1. The lot Appellant Vishara Video Inc. is on, at 781 Eighth Avenue in Manhattan, is only 1,965 square feet. ECF No. 51-1 at 2.

The City did not exclude any lots as too large because it urges that "some large lots can be sub-divided or used by multiple commercial enterprises." CSF ¶ 145(i); ECF No. 168-1 at 54. However, the Plaintiffs maintain that "the process for subdividing large lots is burdensome, costly and typically takes over a year to complete." *Id.* The lower court found that these massive lots could be included in the City's analysis of alternative avenues because they are still "part of a general commercial real estate market." Dec. at 117; ECF No. 211 at 117, citing *TJS, 598 F.3d at 29 (2d Cir. 2010)*.

---

[12] https://www.npr.org/2013/02/01/170692025/grand-central-a-cathedral-for-commuters-celebrates-100.

Displaced adult businesses may not be entitled to sites at bargain prices or perfect alternatives. But the alternatives must be reasonable. There is nothing reasonable about saying that a lot which is more than three times as large as Grand Central Terminal should be considered in assessing whether there are "reasonable" alternative avenues for these small bookstores' expression.

There is no "pragmatic likelihood" of these titanic lots actually becoming available to bookstores—which are not even allowed to operate in medium (M2) and heavy (M3) industrial area. *TJS*, 598 F.3d at 27 (one of the factual considerations that "underlie the question of whether sites are part of an actual real estate market" is the "pragmatic likelihood" of it "ever actually becoming available" to a "generic commercial enterprise"), quoting *Stringfellow's*, 91 N.Y.2d at 402. We respectfully submit that this issue regarding the constitutionality of including absurdly unreasonable oversized lots, as decided in *TJS*, is worthy of being revisited.

Even if they could eventually become part of the actual generic commercial real estate market, which is disputed, the extensive amount of time it might take for that to happen is chilling to free expression. An avenue is not reasonable if it is blocked by so many boulders and impediments that no one can actually travel on it. While the City need not chauffeur patrons to

adult bookstores, it cannot banish them to unreasonable or essentially inaccessible areas.

Finally, as recognized by this Court in *754 Orange*, the City can "follow the lead of other cities" and grandfather in existing uses. 761 F.2d at 114. Adult book and video stores are a dying breed. Their numbers are just going down. The status quo should remain for the few Bookstores left in this litigation. They would still be subject to the original 60/40 Rule. Grandfathering or enjoining enforcement would ensure that consenting adults can still view constitutionally protected films in the privacy of booths.

## CONCLUSION

For all these reasons, as well as those advanced in the Consolidated Brief, the Bookstore Appellants request the judgment of the district court be reversed and vacated, and the case be remanded for the relief sought in the Second Amended Complaint (ECF No. 78 at 64-66) including, but not limited to,

(1) a permanent injunction enjoining and restraining the Defendants, and their employees, agents and servants, from enforcing any provision of Text Amendment N 010508 ZRY to the City's Zoning Resolution against the Appellants' establishments;

(2) a judgment declaring Text Amendment N 010508 ZRY, as it relates to bookstores, arbitrary, unreasonable, discriminatory, confiscatory, void, unconstitutional on its face and as applied to the Appellants;

(3) reasonable legal fees under 42 U.S.C. §§ 1983 and 1988;

(4) costs and disbursements of this action; and

(5) such other and further relief as shall seem just and proper.

Dated:      New York, New York
              April 30, 2024

/s/ Erica T. Dubno
Erica T. Dubno, Esq.
Fahringer & Dubno
Herald Price Fahringer PLLC
43 West 43rd Street, Suite 261
New York, New York 10036
(212) 319-5351
(212) 319-6657 (fax)
erica.dubno@fahringerlaw.com

Counsel for Bookstore Plaintiffs-Appellants

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(g), the undersigned hereby certifies that:

1. This brief complies with the type-volume limitation of Second Circuit Local Rule 32.1(a)(4) because this brief contains 9,321 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface in 14-point Times New Roman font.

April 30, 2024

/s/ Erica T. Dubno_____
Erica T. Dubno, Esq.

50