# 24-621-cv(L),
## 24-623(CON), 24-636(CON), 24-640(CON)

# United States Court of Appeals
### for the
# Second Circuit

557 ENTERTAINMENT INC., DCD EXCLUSIVE VIDEO INC., VIDEO LOVERS INC., JAYSARA VIDEO, INC., VISHARA VIDEO, INC., RAINBOW STATION 7 INC., CLUB AT 60TH STREET, INC., a Delaware corporation, JACARANDA CLUB, LLC, a New York limited liability company, DBA Sapphire, 59 MURRAY ENTERPRISES, INC., AKA 59 Murray Corp., DBA New York Dolls, AAM HOLDING CORP., DBA Private Eyes, JNS VENTURES LTD, DBA Vixen, TWENTY WEST PARTNERS, INC., d/b/a Wonderland, 689 EATERY, CORP., DBA Satin Dolls, 725 EATERY, CORP., substituting for MLB Enterprises, Corp., DBA Platinum Dolls,

*Plaintiff-Appellants,*

*(For Continuation of Caption See Inside Cover)*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## SUPPLEMENTAL REPLY BRIEF FOR APPELLANTS

ERICA T. DUBNO, ESQ.
FAHRINGER & DUBNO
*Attorney for Appellants*
  *557 Entertainment Inc., et al.*
43 West 43rd Street, Suite 261
New York, New York 10036
(212) 319-5351

COUNSEL PRESS   (800) 4-APPEAL • (333509)

336 LLC, DBA The Erotica, CHELSEA 7 CORP., 725 VIDEO OUTLET INC., GOTHAM VIDEO SALES & DISTRIBUTION INC., VISHANS VIDEO, INC., EXPLORE DVD LLC,

*Plaintiffs,*

– v. –

CITY OF NEW YORK, HON. BILL DE BLASIO, as Mayor of the City of New York, MELANIE E. LA ROCCA, as Commissioner of Buildings, Department of Buildings of the City of New York, RICK D. CHANDLER, as Commissioner of Buildings, Department of Buildings of the City of New York,

*Defendants-Appellees.*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................. ii

POINT I

The 2001 Amendments are an Arbitrary and Irrational Infringement on the Bookstore Plaintiffs' Property Interests and Violate the First and Fourteenth Amendments ............................................................... 1

    The 2001 Amendments are Not a Legitimate Exercise of the City's Zoning Powers ........................................................................................... 1

    The Bookstore Plaintiffs Have Property Rights Entitled to Protection ............................................................. 7

POINT II

The 2001 Amendments Violate the First Amendment Because They Do Not Allow Reasonable Alternative Avenues of Communication, and Do Not Leave the Quantity of Speech Substantially Intact, Especially in Light of Unique Zoning Restrictions and Issues Relating to Bookstores ............................................................................ 9

CONCLUSION ........................................................................................ 12

CERTIFICATE OF COMPLIANCE ...................................................... 14

# TABLE OF AUTHORITIES

*754 Orange Ave., Inc. v. City of West Haven, Conn.*,
  761 F.2d 105 (2d Cir. 1985) ..................................................................6

*City of Los Angeles v. Alameda Books, Inc.*,
  535 U.S. 425 (2002)............................................................................ 11

*City of Renton v. Playtime Theatres, Inc.*,
  475 U.S. 41 (1986)................................................................................5

*DLC Management Corp. v. Town of Hyde Park*,
  163 F.3d 124 (2d Cir. 1998) ..................................................................8

*Ellington Const. Corp. v.
  Zoning Bd. of Appeals of Inc. Village of New Hempstead*,
  77 N.Y.2d 114 (1990)............................................................................8

*Fred F. French Investing Co., Inc. v. City of New York*,
  39 N.Y.2d 587 (1976)............................................................................2

*Joey's Auto Repair & Body Shop v. Fayette County*,
  785 F.App'x 46 (3rd 2019).....................................................................7

*St. Onge v. Donovan*,
  71 N.Y.2d 507 (1988)............................................................................3

*Trustees of Union College v. Schenectady City Council*,
  91 N.Y.2d 161 (1997)............................................................................1

# POINT I

### The 2001 Amendments are an Arbitrary and Irrational Infringement on the Bookstore Plaintiffs' Property Interests and Violate the First and Fourteenth Amendments

The Bookstore Plaintiffs' Supplemental Opening Brief established that the challenged 2001 Amendments to New York City's Zoning Resolution are not a legitimate exercise of the City's zoning powers. Their enforcement—for the first time in more than 20 years—against small bookstores would be arbitrary, irrational, confiscatory in operation, and would deny the Bookstore Plaintiffs of their significant property interests, free expression, and substantive due process, in violation of the First and Fourteenth Amendments.

### The 2001 Amendments are Not a Legitimate Exercise of the City's Zoning Powers

The City urges that the 2001 Amendments are a legitimate exercise of its zoning authority. City Br. at 126. And, courts have consistently upheld local zoning ordinances that "bear a substantial relation to the public health, safety, morals, or general welfare." *Id.* However, the City overlooks *Trustees of Union College v. Schenectady City Council*, 91 N.Y.2d 161, 165 (1997), cited in the Bookstore Plaintiffs' Supplemental Opening Brief at 29, where the Court of Appeals made clear that in New York a "zoning ordinance will

1

be struck down if it bears no substantial relation to the police power objective of promoting the public health, safety, morals or general welfare."

The City also did not discuss *Fred F. French Investing Co., Inc. v. City of New York*, 39 N.Y.2d 587, 591 (1976), where the Court emphasized that while New York City's power to "regulate the use of private property by zoning is broad indeed, it is not unlimited." An "exercise of the police power to regulate private property by zoning which is unreasonable constitutes a deprivation of property without due process of law." 39 N.Y.2d at 595.

A municipality's zoning decisions are not sacrosanct and must be struck down where, as here, they are irrational, arbitrary, and not a legitimate exercise of the City's zoning powers. While back in 1995 the City may have had a substantial and legitimate interest in combating alleged adverse secondary effects from adult establishments, the 2001 Amendments and their oddly specific definition of what constitutes an "adult bookstore" bear absolutely no relation to that interest.

For example, the 2001 Amendments define "adult bookstores" based upon *internal methods of operation*—such as whether certain constitutionally protected expression is "offered for sale only" or "offered for sale or rental." CSF ¶ 27; ECF No. 168-1 at 10. The definition also considers whether a bookstore has a "greater number of different titles" of adult and non-adult

2

material. *Id*. Those and other restrictions relate to the internal operations of bookstores, rather than the use of the land on which the bookstore is located. *See* St. Onge v. Donovan, 71 N.Y.2d 507, 516 (1988).

The City concedes it would be an "impermissible content-based regulation" to regulate the internal operation of bookstores. City Br. at 125. But the City claims the "only change brought about by the 2001 Adult-Use Amendment concerns where those businesses can operate." *Id*. And, under the "definitional amendment, some *additional establishments that were intended to be covered by the 1995 regulations* are now allowed only in places where adult businesses are allowed, thereby abating their negative secondary effects." City Br. at 125-126 (emphasis supplied).

However, these sweeping and unprecedented changes to the definition of "adult bookstore" have no relation to the establishments that were intended to be covered by the 1995 regulations. To the contrary, the legislative history for the 1995 Resolution makes clear that as a "general guideline, the [City Planning] Commission believes that an establishment would need to have at least 40 percent of its accessible floor area used for adult purposes to make it similar to the establishments studied in the [Department of City Planning] Study and thus be an 'adult establishment' or 'adult bookstore.'" 1995 CPC Report at 50; ECF No. 121-5 at 58.

3

The CPC Report noted that "there may be some exceptions to this general [60/40] guidelines." *Id*. For example, an establishment with a "disproportionately large amount of adult materials, as compared to total stock, moved into a smaller amount of floor area should [still] deemed an adult establishment." *Id*. But the City Planning Commission underscored that its study and resulting regulations are "not intended to cover general interest book or video stores with a section of adult materials that is modest in scale as compared to the overall size of the establishment." 1995 CPC Report at 51; ECF No. 121-5 at 59.

But that is precisely what the 2001 Amendments do. By eliminating the focus on the relative percentage of adult and non-adult floor space and stock at a bookstore, and grafting on factors regarding the bookstore's internal operation—including whether it has an "interior configuration and layout which requires customers to pass through an area with adult material in order to access an area with non-adult material"—the 2001 Amendments are not targeted at the type of businesses studied back in 1995 and alleged to cause adverse secondary effects. CSF ¶ 27; ECF No. 168-1 at 10.

To the contrary, the 2001 Amendments impose irrational and unstudied restrictions on bookstores. These regulations, brought under the guise of zoning, dictate the internal workings of small stores that offer constitutionally

4

protected expression to the public. This is because a general interest bookstore that only has 10 percent of its stock dedicated to erotica would face padlock orders and criminal prosecution if the manager wanted to put some adult material in the front for Gay Pride Month, which customers may have to pass to get non-adult material.

Under the 2001 Amendments, building inspectors may count and compare the number of adult and non-adult "titles" to assess whether a bookstore is an "adult bookstore" CSF ¶ 27; ECF No. 168-1 at 10. This was never studied or alleged to cause any adverse effects. Similarly, the 2001 Amendments require building inspectors to consider how adult material is promoted at the business. *Id.* However, the 1995 CPC Report expressly cautioned that factors, "such as the nature or prominence of display of adult materials, would reinsert a level of discretion into an enforcement effort which the Commission believes is unnecessary and should be avoided." 1995 CPC Report at 51; ECF No. 121-5 at 59.

The City claims the 2001 Amendments overcome the standard for substantive due process because they survive intermediate scrutiny under *City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41 (1986), as a "narrowly tailored measure that advances a substantial governmental interest." City Br.

5

at 126. However, as developed in the Consolidated Opening and Reply Briefs, the City failed to meet its burdens under *Renton* or any other standard.

Moreover, there is nothing "narrowly tailored" about a *zoning* ordinance that expands the definition of an "adult bookstore" to include any bookstore (regardless of its relative percentage of adult material) that displays a small collection of adult books near the store's only cash register. CSF ¶ 27; ECF No. 168-1 at 10 ("a method of operation which requires customer transactions with respect to non-adult material to be made in an area of the store which includes adult material").

It also is not narrowly tailored—or even remotely related to proper zoning considerations—to include a sweeping catchall provision in the 2001 Amendments which expands the definition of an adult bookstore even further to include any "other feature relating to the *configuration and layout or method of operation*, as set forth in rules adopted by the Commissioner of Buildings, which the Commissioner has determined render the sale or rental of adult material a *substantial purpose of the business* conducted in such store." CSF ¶ 27; ECF No. 168-1 at 10 (emphasis supplied).

The City never addressed *754 Orange Ave., Inc. v. City of West Haven, Conn.*, 761 F.2d 105, 111 (2d Cir. 1985), where this Court raised concerns that absent a definition of "adult bookstore," a city's restrictions "may, in the

6

hands of its administrators, sweep into its scope literature that has always been accorded full First Amendment protection." And, a municipality cannot regulate the operation of a bookstore indiscriminately. *Id*.

### The Bookstore Plaintiffs Have Property Rights Entitled to Protection

The City claims the Bookstores "do not have a protected property interest in operating their businesses from the locations of their choosing without regard to zoning rules." City Br. at 39, 123, citing *Joey's Auto Repair & Body Shop v. Fayette County*, 785 F.App'x 46, 50 (3rd 2019) (unpublished). The Bookstore Plaintiffs do not suggest their businesses are immune from all zoning restrictions. They already operate subject to the rigors of the 1995 Resolution and its existing court-approved 60/40 Rule, which would continue to regulate the bookstores if the 2001 Amendments are permanently enjoined.

However, the Bookstore Plaintiffs have a protected property interest in continuing to operate their businesses from their existing locations subject to *reasonable* and *rational* zoning restrictions. And, as developed above, the 2001 Amendments are irrational and arbitrary, and constitute a gross abuse of governmental authority. The Bookstore Plaintiffs have legitimate claims of entitlement to their property rights to support their substantive due process claim. They have the right to run their businesses. In addition to endeavoring

7

to make a profit, they employ workers, pay taxes, and disseminate constitutionally protected expression and information to the public.

The City urges that only one Bookstore Plaintiff "was operating before the 2001 Amendment and could possibly be deemed vested." City Br. at 125. However, the City ignores that the property rights of the other Bookstore Plaintiffs vested by equitable estoppel because they opened when the law had been declared unconstitutional or enforcement was stayed. *See* Supplemental Opening Br. at 39, citing *Ellington Const. Corp. v. Zoning Bd. of Appeals of Inc. Village of New Hempstead*, 77 N.Y.2d 114, 122 (1990), and *DLC Management Corp. v. Town of Hyde Park*, 163 F.3d 124, 131 (2d Cir. 1998).

The Zoning Resolution's one year "amortization provision" (City Br. at 124) does not undercut this constitutional challenge. The loss caused by the 2001 Amendments to the public and free expression, as well as to the individual Bookstore Plaintiffs, is so substantial that it outweighs any public benefit gained by the exercise of the City's police power under the guise of zoning. Finally, even if the Bookstore Plaintiffs' Fourteenth Amendment claims are precluded for any reason, which is disputed, the 2001 Amendments were not a legitimate exercise of the City's police and zoning powers, in violation of the First Amendment.

8

# POINT II

**The 2001 Amendments Violate the First Amendment Because They Do Not Allow Reasonable Alternative Avenues of Communication, and Do Not Leave the Quantity of Speech Substantially Intact, Especially in Light of Unique Zoning Restrictions and Issues Relating to Bookstores**

The Bookstore Plaintiffs' Supplemental Opening Brief established that enforcement of this radical and unnecessary zoning amendment subjects bookstores displaced by the 2001 Amendments to even greater locational limitations.[1] Under New York City's Zoning Resolution, bookstores are not allowed to be located within certain zoning districts and use groups. For example, bookstores are prohibited in medium (M2) and heavy (M3) manufacturing districts. CSF ¶¶ 122, 133; ECF Nos. 168-1 at 46, 168-1 at 49.

---

[1] As indicated in the Supplemental Opening Brief, the Clubs establish that their First Amendment rights would be violated, and their expression chilled, through enforcement of the 2001 Amendments. Nothing presented here regarding unique obstacles imposed on bookstores is offered to call into question any of the Clubs' meritorious claims.

9

The City relegates this claim to footnotes and urges that "unlike traditional bookstores, adult bookstores are allowed in all these districts." City Br. at 33 n.10. However, this directly conflicts with the 1994 DCP Adult Entertainment Study, which formed a basis for the 1995 Resolution. There, the City confirmed that bookstores are "not allowed in C3 Districts, and in M2 (Medium Manufacturing) and M3 (Heavy Manufacturing) Districts. Video stores have been treated as bookstores for zoning purposes." DCP Report at 30; ECF No. 45 at 41.

As a consequence, the Plaintiffs' Bookstores may not be permitted in certain industrial areas which form much of the permissible areas for adult establishments. See Declaration of Dr. Elliott Sclar, Emeritus Professor of Urban Planning at Columbia University, ¶¶ 82-91; ECF No. 41 at 53. And, the number of alternative avenues available to bookstores may be less than the totals generally calculated by the City. CSF ¶ 245; ECF No. 168-1 at 78.

The City claims that even if Plaintiffs are correct that adult bookstores are not allowed in M2 or M3 zones, there would still be sufficient alternative sites for bookstores that are displaced by the 2001 Amendments. City Br. at 93 n.24 ("this only takes off the table 110 of the 204 sites that can be simultaneously used by adult establishments" and there would "still be nearly 100 sites available for the City's 14 adult bookstores with peepshow booths

10

that would need to relocate"). However, this overlooks the fact that other types of adult uses (not just bookstores) could still be competing for those limited potential sites. Additionally, speech will not fare well if bookstores are excluded from more than half of the scant areas deemed permissible for adult establishments. *See City of Los Angeles v. Alameda Books, Inc.*, 535 U.S. 425, 440 (2002) (Kennedy, J., concurring).

Finally, the City claims that the Club Plaintiffs—"but not the bookstore plaintiffs"—allege that houses of worship and schools are impermissibly given a veto over permit applications. City Br. at 28. However, the Bookstore Plaintiffs have always joined this sensitive use veto claim, which was raised in their Second Amended Complaint (ECF No. 78 at 46-47), and in Point VII of the Consolidated Opening Brief in this Court. The Bookstore Plaintiffs' Supplemental Opening Brief states that they join in the arguments made in the Consolidated Opening Brief, except Point IX, which relates to narrow tailoring for Clubs. Supplemental Opening Brief at 5.

The Bookstore Plaintiffs rely on the Consolidated Opening Brief, their Supplemental Opening Brief, and the Consolidated Reply Brief for any issues that were not addressed here.

11

## CONCLUSION

The zoning amendments being considered by this Court were enacted back in 2001 based on studies conducted of exclusively adult businesses in 1994—*thirty years ago*. This stale zoning ordinance, which has such grave consequences for free expression, is unnecessary. Its course has run and its time is done. The City easily could do a study today to see if the few 60/40 businesses remaining in New York cause adverse secondary effects. However, it is constitutionally intolerable to enforce—for the first time—zoning amendments enacted nearly 25 years ago against constitutionally protected businesses without giving any consideration to whether those amendments are needed or warranted. It is, indeed, a relic without a purpose.

For all these reasons, as well as those advanced in the Consolidated Opening Brief, the Supplemental Opening Brief, and the Consolidated Reply Brief, the Bookstore Plaintiffs Appellants request the judgment of the district court be reversed and vacated, and the case be remanded for the relief sought in the Second Amended Complaint (ECF No. 78 at 64-66), and such other and further relief as may be just.

Dated:    New York, New York
          December 12, 2024

/s/ Erica T. Dubno
Erica T. Dubno, Esq.
Fahringer & Dubno
Herald Price Fahringer PLLC
43 West 43rd Street, Suite 261
New York, New York 10036
(212) 319-5351
(212) 319-6657 (fax)
erica.dubno@fahringerlaw.com

Counsel for Bookstore Plaintiffs-Appellants

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(g), the undersigned hereby certifies that:

1. This brief complies with the type-volume limitation of Second Circuit Local Rule 32.1(a)(4) because this brief contains 2,544 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface in 14-point Times New Roman font.

December 12, 2024

/s/ Erica T. Dubno_____
Erica T. Dubno, Esq.