UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

----------------------------------------------------------------------X

557 ENTERTAINMENT INC., DCD EXCLUSIVE VIDEO INC., VIDEO LOVERS INC., JAYSARA VIDEO, INC., VISHARA VIDEO, INC., RAINBOW STATION 7 INC., CLUB AT 60TH STREET, INC., a Delaware corporation, JACARANDA CLUB, LLC, a New York limited liability company, DBA Sapphire, 59 MURRAY ENTERPRISES, INC., AKA 59 MURRAY CORP., DBA NEW YORK DOLLS, AAM HOLDING CORP., DBA PRIVATE EYES, JNS VENTURES LTD, DBA VIXEN, TWENTY WEST PARTNERS, INC., DBA WONDERLAND, 689 EATERY, CORP., DBA SATIN DOLLS, 725 EATERY, CORP., SUBSTITUTING FOR MLB ENTERPRISES, CORP., DBA PLATINUM DOLLS,

Nos. 24-621(L)
24-623(C)
24-636(C)
24-640(C)

Plaintiffs-Appellants,

-against-

CITY OF NEW YORK, HON. ERIC ADAMS, as Mayor of the City of New York, JAMES S. ODDO, as Commissioner of Buildings, DEPARTMENT OF BUILDINGS OF THE CITY OF NEW YORK,

Defendants-Appellees.

----------------------------------------------------------------------X

## PLAINTIFFS-APPELLANTS' REPLY
## TO OPPOSITION TO MOTION TO STAY THE MANDATE

Plaintiffs-Appellants reply pursuant to F.R.A.P. 27(a)(4) to the opposition of Defendants-Appellees ("the City") to the pending motion to stay the Mandate (the "Opposition" and "Motion"). Contrary to the City's contentions, the Motion presents

substantial questions for Supreme Court review and there is good cause for a stay. Accordingly, Plaintiffs-Appellants have made the exceptional showing required to justify such relief.

## The Motion Presents Substantial Questions

The Motion establishes that this case presents a number of substantial questions, including whether the substantial governmental interest required to justify an ordinance that impacts free expression under a municipality's police power must exist when it is enforced, or merely only when it is enacted, where there have been significant changed circumstances and the facts that justified the original ordinance no longer exist.

There is no merit to the City's claim that "settled Supreme Court precedent forecloses this argument." Opposition p. 8. The City's reliance on *City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 44 (1986), is misplaced. *Renton* involved a municipality that did not have any adult businesses when it enacted a restrictive adult zoning ordinance. The litigation in that case was commenced soon after the zoning ordinance was enacted and challenged whether the ordinance was designed to serve a substantial governmental interest. That is *not* the question sought to be presented by Plaintiffs-Appellants to the Supreme Court.

To the contrary, the question presented here relates to whether any substantial governmental interest still exists—decades after an ordinance was enacted—where

there have been *significant changes* in the facts and circumstances that formed the basis for enacting the ordinance in the first place. Thus, regardless of whether the City of New York had a substantial governmental interest back in 2001 or even 1995, when it enacted its adult zoning ordinance, in 2025 these stale restrictions on free expression do not pass constitutional muster since the basis and need for the zoning amendments no longer exists.

Legislation under the aegis of a municipality's police power—especially zoning ordinances that impact free expression—is not sacrosanct and must be subject to invalidation if it is no longer needed. The City failed to address *United States v. Carolene Products Co.*, 304 U.S. 144, 155 (1938), where the Court recognized that the "constitutionality of a statute predicated upon the existing of a particular set of facts may be challenged by showing to the court that those facts have ceased to exist." *Renton* did not address this substantial issue, which impacts zoning ordinances and free expression across the nation.

The Motion also anticipates the presentation to the Supreme Court of the substantial question of whether a zoning ordinance adopted to target one form of business is unconstitutional when the state courts made express factual findings that the business form does not give rise to negative secondary effects.

Prior decisions cited by the City are not indicative of the substantiality of the *Federal constitutional questions* presented in this case. *Buzzetti v. City of New York*,

3

140 F.3d 134 (2d Cir. 1998) (cited in Opposition at 3) related to the 1995 Anti-Adult Zoning Amendments, not the 2001 Amendments which eviscerated the pragmatic 60/40 rule adopted in 1995. And *For the People Theatres of NY Inc. v. City of N.Y.,* 29 N.Y.3d 340 (2017) (cited in Opposition at 2), was a *State constitutional challenge* to the 2001 Amendments. These cases do not foreclose the Federal challenge in or resolve the questions presented by this case, particularly in light of the duty of Federal courts to conduct an independent, de novo review of the entire record to ensure that the judgment does not "constitute a forbidden intrusion on the field of free expressions" under the First Amendment. *See, Bose Corp. v Consumers Union of United States,* 466 U.S. 485 (1984), which the City does not even mention. To date, neither the Supreme Court nor the Second Circuit has conducted such an independent, de novo review of the entire record.[1]

There is no merit to the City's claim that the Supreme Court is "not any more likely to grant certiorari now" merely because it denied certiorari in two other cases which raised different issues. (Opposition at 10). Moreover, the constitution of the

---

[1] Judge Pauley's Preliminary Injunction, *725 Eatery Corp. v. City of New York*, 408 F.Supp.3d 424 (S.D.N.Y. 2019), was not appealed. This Court's recent 10-page long Summary Order, *557 Entertainment Inc. v. City of New York, n.o.r.,* 2025 WL 1873473 (2d Cir. 2025), affirming Judge Liman's 167-page District Court Order, *689 Eatery Corp. v. City of New York*, 716 F.Supp.3d 88 (S.D.N.Y. 2024), was the first and only appellate review *in this case*, and did not engage in the "de novo review of the entire record" contemplated by *Bose.*

Supreme Court has changed considerably since 1998, when the Court declined the request of Adele Buzzetti (who was not party to this action) to consider (1) "Whether the New York City adult-business zoning ordinance [enacted in 1995] discriminates against women in violation of the Fourteenth Amendments because it imposes onerous land-use restrictions on clubs featuring barechested female performers but not on clubs featuring barechested male performers"; and (2) whether the 1995 Ordinance "violates the First and Fourteenth Amendments because it selectively burdens erotic expression based upon the sex of the speaker." *Buzzetti v. City of New York*, 525 U.S. 816, No. 97-1900, pet. for cert. available at 1998 WL 34112480.

*The substantial questions presented in this case are novel and worthy of review by the Supreme Court.*

### Good Cause Exists for Granting the Motion

The Motion also established good cause for staying the Mandate where this case involves enforcement, for the first time, of a zoning ordinance enacted nearly 25 years ago. The City underestimates the "real-world" effect of a stay of the Mandate, which effectively maintains the status quo.

First, the Stipulation between the parties provides that the 2001 Amendments will not be enforced against the Plaintiffs-Appellants pending a decision on appeal by a merits panel of this Court. While the Mandate may often be regarded as a formality, the appeals will not have been finally decided on the merits until the

Mandate—the Judgment of this Court—is issued. *See, e.g.*, *United States v. Simmons*, 923 F.2d 934, 956 (2d Cir. 1991) (a "Court of Appeals decision does not become effective until its mandate issues").

It is for this reason that the Federal Rules of Appellate Procedure expressly provide for panel rehearing and rehearing en banc [FRAP 40], and stay of the Mandate pending a petition for certiorari [FRAP 41(d)]. Only when that process has been exhausted, and the Mandate has issued, has the case been finally decided on the merits.

Second, the NYC Zoning Resolution is not self-enforcing. Even assuming, *arguendo,* that the stipulated stay of enforcement has expired, a stay of the Mandate would clearly be taken into account by any Court adjudicating any attempt by the City to enforce the challenged provisions against the Plaintiffs-Appellants, and any adjudication of their "as applied" constitutional defenses, while their petition for certiorari is pending.

## The Movants will be Irreparably Harmed without a Stay

Good cause for a stay exists where the movants would be irreparably harmed without a stay. *See, e.g., United States v. Pleau*, 630 F.3d 1, 23 (1st Cir. 2012) (Torruela, J., dissenting) (explaining that irreparable harm exists where the movant "could hardly obtain meaningful relief" later); *see also, e.g., Flue-Cured Tobacco Cooperative Stabilization Corp. v. United States EPA,* 313 F.3d 852, 862 (4th Cir.

2002) (staying issuance of the mandate pending application for certiorari because "the legal questions at stake are substantial" and "[t]he practical consequences … are great," including loss of livelihood). This is particularly so in a First Amendment case, since "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns,* 427 U.S. 347, 374 (1976).

Moreover, if the Mandate is not stayed and the 2001 Amendments are enforced against the Plaintiffs-Appellants, they will be forced to censor their expression and/or cease operations, with concomitant economic injury to their employees and loss of tax revenues to the City and State. Violation of the Zoning Resolution also subjects the Plaintiffs-Appellants and possibly their employees to serious criminal charges, punishable by nearly one year in jail. That bell cannot be unrung, and they will be unable to obtain meaningful relief later. This constitutes good cause to stay the issuance of the Mandate during the certiorari process.

On the other hand, the granting of the Motion will not prejudice the City, as the record overwhelmingly establishes that the 1995 Amendments successfully dealt with the negative secondary effects associated with "adult establishments" *and* that the Plaintiffs-Appellants' 60/40 businesses *do not cause negative secondary effects*. *See, For the People Theatres of NY Inc. v. City of N.Y.,* 38 Misc.3d 663 (Sup. Ct., N.Y. Co., 2012), *aff'd,* 131 A.D.3d 279 (1st Dept. 2015), *rev'd on oth. grnds.,* 29

7

N.Y.3d 340 (2017). If the stay is granted, the Plaintiffs-Appellants would still continue to be subject to the strict rigors of the 1995 restrictions. As a consequence, stay of the Mandate will in no way cause any harm or adversely impact the City.

## Conclusion

For all these reasons, as well as those previously advanced, Plaintiffs-Appellants request that issuance of the Mandate should be stayed, and that the Court grant such other and further relief as may be just.

Dated: September 11, 2025

                Respectfully submitted,

                **EDWARD S. RUDOFSKY, ESQ.**
                **ZANE and RUDOFSKY**
                *Attorneys for Plaintiffs-Appellants*
                 *In Case No. 24-636(C)*
                Five Arrowwood Lane
                Melville, New York L1747
                (917) 913-9697

                    s/ *Edward S. Rudofsky*
By:_____
                    Edward S. Rudofsky
                    ed@rudofskylaw.com

*On The Motion:*

**ERICA T. DUBNO, ESQ.**
**FAHRINGER & DUBNO**
*Attorneys for Plaintiffs-Appellants*
 *ln Case No. 24-621(L)*
43 West 43rd Street, Suite 261
New York, New York 10036
(212) 319-5351
*erica.dubno@fahringerlaw.com*

**JEFFREY M. NYE, ESQ.**
**SSP LAW CO., L.P.A.**
*Attorneys for Plaintiffs-Appellants*
 *ln Case No. 24-640(C)*
7373 Beechmont Avenue
Cincinnati, Ohio 45230
(513) 533-6714
*jmn@sspfirm.com*